# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

| | |
|---|---|
| **STEVEN M. WILLIAMS,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 2:20-00688 |
| **CURTIS DIXION,** *et al.*, | ) |
| **Defendants.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Preliminary Injunction (Document No. 15), filed on March 9, 2021. For the reasons explained below, the undersigned has concluded that Plaintiff's above Motion should be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 19, 2020, Plaintiff filed his Application to Proceed Without Prepayment of Fees or Costs and a Complaint for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Document Nos. 1 and 2.) Plaintiff names the following as Defendants: (1) Curtis Dixion, Investigator a Mount Olive Correctional Complex ("MOCC"); (2) Brenda Ward, Pro Committee of the Quality of Life Program at MOCC; (3) John Bess, Director of the Quality of Life Program at MOCC; (4) Jarrod Wilson, Disciplinary Hearing Officer at MOCC; and (5) Donald Ames, Warden of MOCC. (Document No. 2.) Plaintiff alleges that on June 17, 2020, Curtis Dixion filed a Disciplinary Incident Report against Plaintiff charging him with Trafficking (Marijuana/Hash) in violation of 1.11B. (Id., p. 5.) Plaintiff claims that on June 22, 2020, he "was arrested and sent to segregation on a 72-hour investigation." (Id.) Plaintiff states that he passed the urine test and was released back to general population on June 24, 2020, "due to the lack of

1

evidence and investigation being completed free of 1.11B Trafficking charge." (Id.) Plaintiff claims that on July 8, 2020, he was "recharged with the same charge, 1.11B Trafficking." (Id., p. 6.) Plaintiff acknowledges that he was brought before the Disciplinary Hearing Officer Jarrod Wilson on July 13, 2020. (Id.) Plaintiff states that Curtis Dixion was present as the charging officer and a witness against Plaintiff. (Id.) Plaintiff further states that he was provided with an Inmate Representative (Stephen Wilson), who had the content of the Incident Report read into the record. (Id.) Plaintiff explains that his Inmate Representative made a motion to dismiss citing a violation of Policy Directive 325.00. (Id.) Plaintiff contends that Policy Directive 325.00 states all Incident Reports must state date, time, location of individuals present, and all other pertinent details regarding the alleged violation. (Id., p. 7.) Plaintiff argues that Curtis Dixion failed to include the foregoing in the Incident Report. (Id.) Plaintiff alleges that during the disciplinary hearing, Curtis Dixion admitted his failure to include dates in the Incident Report and improperly produced photographs that were not included in the Incident Report. (Id.) Plaintiff then summarizers the arguments made by Curtis Dixion and his Inmate Representative. (Id., pp. 8 – 10.) Plaintiff concludes that the Hearing Officer Jarrod Wilson improperly determined Plaintiff was guilty based upon circumstantial and hearsay evidence. (Id., p. 10.) Plaintiff acknowledges that he filed an appeal, but complains that such was denied by Warden Ames. (Id.)

On September 11, 2020, Plaintiff complains that he was taken in front of Brenda Ward and John Bess, members of the Quality of Life ("QOL") program. (Id., p. 11.) Plaintiff alleges that Brenda Ward and John Bess "used a dismissed pass write up of trafficking on Plaintiff at the hearing to also convict." (Id.) Plaintiff complains that his request to produce witnesses was denied. (Id.) Plaintiff states that he "was changed from punitive segregation to administrative segregation, a 340-day program." (Id.) Plaintiff complains that he lost his job as a handicap assistant and his

privilege to take educational classes. (Id.) Based upon the foregoing, Plaintiff argues that Defendants violated his procedural due process rights under the Fourteenth Amendment by failing to comply with the requirements of West Virginia Division of Corrections Policy Procedures 325.00 and 6.02-6.12.

By Order entered on February 26, 2021, the undersigned granted Plaintiff's Application to Proceed Without Prepayment and Fees, directed Plaintiff to pay an initial partial payment of the filing fee, and directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Document No. 12.)

Subsequently, Plaintiff filed his instant Motion for Preliminary Injunction, Memorandums in Support, and Declarations. (Document Nos. 14, 14-1, 15, 24, 25.) Plaintiff requests a preliminary injunction for release from administrative segregation. (Id.) Plaintiff contends that his segregation is "a 13 month program" explaining that he was placed in punitive segregation for 60-days and then placed in administrative segregation for another 11 months. (Id.) Plaintiff alleges that he has been held in administrative segregation since July 13, 2020. (Id.) Plaintiff contends that according to West Virginia Department of Correction Policy, "Plaintiff is suppose to be reviewed by a review board every 30 days." (Id.) Plaintiff contends that he has "not yet seen a review board" and he has been "in administrative segregation for ruffly 8 months." (Id.) Plaintiff argues this is a violation of his due process rights and the "due process clause is still being violated day by day from this violation." (Id.) Plaintiff claims that he is suffering from depression, stress, and anxiety. (Id.) Plaintiff states he has been placed on medication for the foregoing. (Id.) Plaintiff concludes that the foregoing "shows atypical and significant hardship." (Id.) Plaintiff further states that he should be released back to general population so that he can continue to take his G.E.D. classes. (Id.) Plaintiff contends that he needs to complete his G.E.D. classes "in order to make parole to be

release back into the world." (Id.) Second, Plaintiff asserts that his release to general population would ensure Plaintiff the full ability to investigate his case. (Id.) Plaintiff asserts that he has limited access to the law library and phone usage due to his placement in segregation. (Id.) Plaintiff complains that he only has access to the law library on Mondays, Wednesdays, and Fridays. (Id.) Plaintiff further states that he "is limited to use the phone just for one hour in the morning around 7:30 a.m." (Id.) Finally, Plaintiff concludes that he is likely to succeed on the merits because Defendants violated DOC Policies. (Id.)

On June 1, 2021, Defendants filed their Response in Opposition. (Document No. 34.) Defendants argue that Plaintiff's Motion does "little more than state the required elements without proving required factual support necessary for the Court to grant the relief sought." (Id.) Defendants contends that "Plaintiff has not established that a liberty interest was implicated in the decisions of prison staff to place and retain him in administrative segregation." (Id.) Defendants further note that "[c]ourts, as a rule, defer to prison administrator in making housing classifications." (Id.)

On June 9, 2021, Plaintiff filed his Reply. (Document No. 35.) In his Reply, Plaintiff merely reasserts the same arguments as presented above. (Id.) Plaintiff continues to request that this Court order his release into general population. (Id.)

## **THE STANDARD**

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies

>to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed.R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

>While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." The Real Truth About Obama, Inc. v. Federal Election Commission., 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[1] The Fourth Circuit has explained that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate

---

[1] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." Id. Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer, 2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that he is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

## **DISCUSSION**

First, the undersigned notes that Plaintiff has failed to establish that he is likely to succeed upon the merits. Although the undersigned determined upon screening pursuant to 28 U.S.C. §

1915A that Plaintiff's Complaint stated a colorable claim under Section 1983 against Defendants, there is no indication at this point in the proceedings that Plaintiff is likely to succeed on the merits. Viewing the allegations contained in Plaintiff's Complaint liberally, the undersigned determined that Plaintiff alleged that Defendants violated his constitutional rights under the Fourteenth Amendments. Specifically, Plaintiff argues that Defendants violated his procedural due process rights under the Fourteenth Amendment by failing to comply with the requirements of West Virginia Division of Corrections Policy Procedures 325.00 and 6.02-6.12. In his instant Motion, Plaintiff further complains that Defendants are failing to review his segregation placement every 30 days a required by WVDOC Policy. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). To establish an interest to invoke the procedural protections of the Due Process Clause, a prisoner must show the following: (1) The denial of a liberty interest that arises "from the Constitution itself, by reason of guarantees implicit in the word 'liberty'" or "from an expectation or interest created by state laws or policies," and (2) Demonstrate this denial imposed an "atypical or significant hardship on the inmate in relations to the ordinary incidents of prison life." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005)("[A] liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Connor*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).")[2]; also see Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997)("In order

---

[2] The Supreme Court held in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that inmates have a liberty interest in avoiding confinement conditions that impose "atypical or significant hardship on the inmate in relations to the ordinary incidents of prison life." Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted).

to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by government action."); Prieto, 780 F.3d at 248(emphasizing that an inmate must establish both "a basis for an interest or expectation in state regulations" and that the "denial of this state-created interest resulted in an 'atypical and significant hardship' to him"). The Fourth Circuit has clarified that Sandin "does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." Prieto v. Clarke, 780 F.3d 245, 249 (4th Cir. 2015). Rather, the Fourth Circuit explained that inmates must *first* establish an interest in "avoiding onerous or restrict confinement conditions" arising from a policy or regulation (e.g. a policy or regulation mandating periodic review). Incumaa v. Stirling, 791 F.3d 517, 527 (4th Cir. 2017)(citing Prieto, 780 F.3d at 249). If the inmate can establish such an interest, the inmate must then establish that the conditions experienced by the inmate constituted atypical and significant hardship in relation to the ordinary incidents of prison life. Id. Assuming Plaintiff's allegations to be true, the undersigned finds that Plaintiff can satisfy the first prong under Wilkinson because Plaintiff states that WVDOC Policy mandates periodic reviews of segregation placement. See Incumaa, 791 F.3d at 527("Because there is uncontroverted evidence that the Department policy here mandates review of Appellant's security detention every 30 days, we have no trouble concluding that Appellant has met the first prong of his burden under *Sandin* and its progeny.").

Since it appears Plaintiff can satisfy the first prong, the undersigned will consider whether it appears Plaintiff can establish that the conditions of confinement constitute atypical and significant hardship in relation to the ordinary incidents of prison life. A "fact specific" comparative exercise is required when determining whether confinement conditions are atypical and substantially harsh "in relation to the ordinarily incidents of prison life." Incumaa, 791 F.3d at

527. In Prieto, the Fourth Circuit determined that this Sandin standard contains two parts: (1) First, the Court must determine what constitutes the "ordinary incidents of prison life" for this particular inmate; and (2) Second, with that baseline established, the Court must determine whether the prison conditions impose atypical and substantial hardship in relation to that norm. Prieto, 780 F.3d at 253-54. Although general prison population is not always the basis for comparison, "general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." Incumaa, 791 F.3d at 527("[T]he 'baseline for atypicality' may shift depending on the 'prisoner's conviction and sentence.'")(citing Prieto, 780 F.3d at 253).

In the instant case, it appears that general population is the appropriate baseline as Plaintiff was in general population before being placed in administrative segregation. Using general population as the baseline, the undersigned finds that Plaintiff fails to allege conditions of confinement in segregation that satisfy the standard set forth in Sandin. In Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

Beverati, 120 F.3d at 502. In contrast, the Supreme Court in Wilkinson determined that the following conditions at a supermax facility imposed an atypical and significant hardship under any plausible baseline:

> . . . almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

Wilkinson, 545 U.S. at 223-24, 125 S.Ct. at 2394-95.

Although Plaintiff appears to challenge the appropriateness for his placement in segregation, he does not complain that specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in mainline population. Segregation, in and of itself, does not deprive an inmate of a liberty interest or create an atypical hardship. See Beverati, 120 F.3d at 502. Plaintiff further acknowledges that his placement in administrative segregation is for a limited period of time (11 months). As for the conditions of segregation, Plaintiff complains of the following: (1) He is suffering from depression, stress, and anxiety; (2) His placement back in general population would allow him to continue to take his G.E.D. classes, which he needs to complete "in order to make parole to be release back into the world;" and (3) He has limited access to the law library and telephone. Concerning Plaintiff's claim that he is suffering depression, stress, and anxiety, Plaintiff also acknowledges that he is being provided medication to treat the foregoing. Further, it is not uncommon for inmates to suffer from depression, stress, and anxiety due to the general conditions of their incarceration.

The undersigned cannot find that Petitioner's *restricted* access to the law library or telephone usage constitutes an atypical and significant hardship. Although Plaintiff complains that he is unable to participate in educational classes, Plaintiff acknowledges that such is for a limited time period. At this point in the proceedings, the undersigned cannot find that Plaintiff's conditions of confinement in segregation are atypical or resulting in a significant hardship.[3] Based upon the foregoing, the undersigned finds that Plaintiff has failed to establish that he is likely to succeed upon the merits for the purposes of granting a preliminary injunction.

Next, Plaintiff has failed to show that he will suffer irreparable harm if the preliminary injunction is denied. Plaintiff appears to state that he is suffering irreparable harm based upon the following: (1) He is suffering from depression, stress, and anxiety; (2) His placement back in general population would allow him to continue to take his G.E.D. classes, which he needs to complete "in order to make parole to be release back into the world;" and (3) He has limited access to the law library and telephone. Plaintiff's conclusory claim that the foregoing results irreparable harm is insufficient. Plaintiff fails to explain how the foregoing is causing him irreparable harm. Concerning his alleged depression, stress, and anxiety, Plaintiff acknowledges that he is receiving medication for the foregoing issues. See DePaola v. Clarke, 2015 WL 5166900, * 1 (W.D.Va. Sep.

---

[3] Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. *See Hewitt v. Helms*, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Meachum v. Farno*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest); and *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994), citing *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution").

3, 2015)(finding plaintiff's allegation that segregation was exacerbation his mental health problems did not establish irreparable harm for the granting of a preliminary injunction for release from segregation). Next, Plaintiff's claim that completion of his G.E.D. classes will result in his release on parole is speculative. Finally, there is no indication that Plaintiff's limited access to the law library and telephone will result in irreparable harm. Plaintiff acknowledges that he has access to the law library three days a week and telephone access for one hour each day. Plaintiff's conclusory and speculative allegation that irreparable harm will result is insufficient. As explained above, the mere possibility of harm will not suffice to support the granting of a temporary or preliminary injunction. Winter, 55 U.S. at 22, 129 S.Ct. at 375-76. Therefore, the undersigned finds that Plaintiff has not clearly shown that he is likely to succeed on the merits, or that he is likely to be irreparably harmed without a temporary or preliminary injunction. Accordingly, it is respectfully recommended that the District Court deny Plaintiff's Motion for Preliminary Injunction (Document No. 14).

**PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion for Preliminary Injunction (Document No. 14).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 16, 2021.

Omar J. Aboulhosn
United States Magistrate Judge