**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **STEVEN M. WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 2:20-00688** |
| | ) | |
| **CURTIS DIXON, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Plaintiff's Motion for Summary Judgment (Document No. 75), filed on October 12, 2021; and (2) Defendants' Motion for Summary Judgment (Document No. 82), filed on November 9, 2021. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 84.) Plaintiff filed his Response in Opposition on November 29, 2021. (Document No. 86.) On December 3, 2021, Defendants filed their Reply. (Document No. 87). (Id.) Having examined the record and considered the applicable law, the undersigned has concluded that Plaintiff's Motion for Summary Judgment (Document No. 75) should be denied, and Defendants' Motion for Summary Judgment (Document No. 19) should be granted.

**PROCEDURAL BACKGROUND**

On October 19, 2020, Plaintiff, acting *pro se*,[1] filed his Application to Proceed Without

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Prepayment of Fees or Costs and a Complaint for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. (Document Nos. 1 and 2.) Plaintiff names the following as Defendants: (1) Curtis Dixion, Investigator a Mount Olive Correctional Complex ("MOCC"); (2) Brenda Ward, Pro Committee of the Quality of Life Program at MOCC; (3) John Bess, Director of the Quality of Life Program at MOCC; (4) Jarrod Wilson, Disciplinary Hearing Officer at MOCC; and (5) Donald Ames, Warden of MOCC. (Document No. 2.) Plaintiff alleges that on June 17, 2020, Curtis Dixion filed a Disciplinary Incident Report against Plaintiff charging him with Trafficking (Marijuana/Hash) in violation of 1.11B. (Id., p. 5.) Plaintiff claims that on June 22, 2020, he "was arrested and sent to segregation on a 72-hour investigation." (Id.) Plaintiff states that he passed the urine test and was released back to general population on June 24, 2020, "due to the lack of evidence and investigation being completed free of 1.11B Trafficking charge." (Id.) Plaintiff claims that on July 8, 2020, he was "recharged with the same charge, 1.11B Trafficking." (Id., p. 6.) Plaintiff acknowledges that he was brought before the Disciplinary Hearing Officer Jarrod Wilson on July 13, 2020. (Id.) Plaintiff states that Curtis Dixion was present as the charging officer and a witness against Plaintiff. (Id.) Plaintiff further states that he was provided with an Inmate Representative (Stephen Wilson), who had the content of the Incident Report read into the record. (Id.) Plaintiff explains that his Inmate Representative made a motion to dismiss citing a violation of Policy Directive 325.00. (Id.) Plaintiff contends that Policy Directive 325.00 states all Incident Reports must state date, time, location of individuals present, and all other pertinent details regarding the alleged violation. (Id., p. 7.) Plaintiff argues that Curtis Dixion failed to include the foregoing in the Incident Report. (Id.) Plaintiff alleges that during the disciplinary hearing, Curtis Dixion admitted his failure to include dates in the Incident Report and improperly produced photographs that were not included in the Incident Report. (Id.) Plaintiff then

2

summarizes the arguments made by Curtis Dixion and his Inmate Representative. (Id., pp. 8 – 10.) Plaintiff concludes that the Hearing Officer Jarrod Wilson improperly determined Plaintiff was guilty based upon circumstantial and hearsay evidence. (Id., p. 10.) Plaintiff acknowledges that he filed an appeal, but complains that such was denied by Warden Ames. (Id.)

On September 11, 2020, Plaintiff complains that he was taken in front of Brenda Ward and John Bess, members of the Quality of Life ("QOL") program. (Id., p. 11.) Plaintiff alleges that Brenda Ward and John Bess "used a dismissed past write up of trafficking on Plaintiff at the hearing to also convict." (Id.) Plaintiff complains that his request to produce witnesses was denied. (Id.) Plaintiff states that he "was changed from punitive segregation to administrative segregation, a 340-day program." (Id.) Plaintiff complains that he lost his job as a handicap assistant and his privilege to take educational classes. (Id.) Based upon the foregoing, Plaintiff argues that Defendants violated his procedural due process rights under the Fourteenth Amendment by failing to comply with the requirements of West Virginia Division of Corrections Policy Procedures 325.00, Sections 6.02-6.12.

By Order entered on February 26, 2021, the undersigned granted Plaintiff's Application to Proceed Without Prepayment and Fees, directed Plaintiff to pay an initial partial payment of the filing fee, and directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Document No. 12.)

Subsequently, Plaintiff filed his Motion for Preliminary Injunction, Memorandums in Support, and Declarations. (Document Nos. 14, 14-1, 15, 24, 25.) Plaintiff requested a preliminary injunction for release from administrative segregation. (Id.) Plaintiff explained that his segregation is "a 13 month program" because he was placed in punitive segregation for 60-days and then placed in administrative segregation for another 11 months. (Id.) Plaintiff claimed that he was suffering

3

from depression, stress, and anxiety. (Id.) Plaintiff acknowledged he was placed on medication for the foregoing. (Id.) Plaintiff concluded that the foregoing "shows atypical and significant hardship." (Id.) Plaintiff further stated that he should be released back to general population so that he can continue to take his G.E.D. classes. (Id.) Second, Plaintiff asserted that his release to general population would ensure Plaintiff the full ability to investigate his case. (Id.) Plaintiff complained that he had limited access to the law library and phone usage due to his placement in segregation. (Id.) Plaintiff further complained that he only has access to the law library on Mondays, Wednesdays, and Fridays. (Id.) Plaintiff stated that he was "limited to use the phone just for one hour in the morning around 7:30 a.m." (Id.) Finally, Plaintiff concluded that he was likely to succeed on the merits because Defendants violated DOC Policies. (Id.)

On June 1, 2021, Defendants filed their Response in Opposition. (Document No. 34.) Plaintiff filed his Reply on June 9, 2021. (Document No. 35.) By Proposed Findings and Recommendation entered on July 16, 2021, the undersigned recommended that Plaintiff's Motion for Preliminary Injunction be denied. (Document No. 48.) By Memorandum Opinion and Order entered on August 9, 2021, United States District Judge Irene C. Berger adopted the undersigned's recommendation and denied Plaintiff's Motion for Preliminary Injunction. (Document No. 59.)

On October 12, 2021, Plaintiff filed his Motion for Summary Judgment. (Document No. 75.) Plaintiff argues that he is entitled to summary judgment on his denial of due process claim. (Id.) First, Plaintiff argues that the "[c]onduct of the Disciplinary Hearing Officer and Investigator denied Plaintiff due process of law." (Id.) Second, Plaintiff argues that the "[d]enial of having witness called in his defense violated Plaintiff's right to Due Process." (Id.) Finally, Plaintiff argues that "Defendant Donald Ames is liable for Due Process violations by reason of his direct failure to correct the violation [in his] direct appeal." (Id.)

4

On October 25, 2021, Defendants filed their Response in Opposition to Plaintiff's Motion for Summary Judgment. (Document No. 80.) First, Defendants argue that Plaintiff's due process claims against Defendants Dixon and Wilson fail as a matter of law because Plaintiff cannot prove a constitutional violation. (Id.) Second, Plaintiff's due process claims against Defendants Bess and Warden "should be denied as no liberty interest exists for Plaintiff to avoid segregation and/or no constitutional right of Plaintiff was violated." (Id.) Third, Plaintiff's claim against Defendant Ames should be denied because he did not violate any of Plaintiff's constitutional rights. (Id.) Finally, Defendants argue they are entitled to qualified immunity. (Id.)

On November 9, 2021, Defendants filed their Motion for Summary Judgment and Memorandum in Support. (Document No. 82, and 83.) First, Defendants argue that "Plaintiff cannot identify a liberty interest which entitled him to any procedural due process protection. (Id.) Second, Defendants contend that "[i]f Plaintiff had a right to due process protection, the due process provided exceeded the legal standard required." (Id.) Third, Defendants assert that Defendants Bess and Ward are entitled to summary judgment because Plaintiff has no liberty interest in avoiding segregation and Plaintiff's constitutional rights were not violated. (Id.) Fourth, Defendants argue that Defendant Ames is entitled to summary judgment because he did not violate any of Plaintiff's constitutional rights. (Id.) Finally, Defendants argue that they are entitled to qualified immunity. (Id.)

As Exhibits, Defendants attach the following: (1) A copy of the West Virginia Division of Correction's Hearing Report regarding Plaintiff's disciplinary charge of Trafficking (Marijuana/Hashish) (Document No. 82-1); (2) A copy of Plaintiff's Disciplinary Incident Report charging Plaintiff was Trafficking (Marijuana/Hashish) in violation of Disciplinary Rule 1.11B (Document No. 82-2); (3) A copy of Policy Directive 325.00, Section 6.02 regarding the

"Reporting Rule Violations" and the redacting of any information regarding the identity of confidential inmate informants (Document No. 82-3); (4) A copy of Superintendent Ames' Memorandum denying Plaintiff's appeal of his conviction of violating Disciplinary Rule 1.11B (Document No. 82-5, p. 2); (5) A copy of the Commissioner's Decision affirming the decision of the Superintendent and denying Plaintiff's appeal (Id., p. 3.); (6) A copy of the audio recording of Plaintiff's disciplinary hearing and administrative segregation hearing (Document Nos. 82-4, 82-6, and 85); (7) A copy of a Notice dated September 9, 2020, advising Plaintiff of his upcoming Initial Administrative Segregation Review and inquiring whether he wanted an inmate legal representative (Document No. 82-7, p. 2); (8) A copy of Plaintiff's "Administrative Segregation Initial Hearing Recommendation" (Id., p. 3); (9) A copy of Plaintiff's "Administrative Segregation Initial Hearing Form" (Id., pp. 4 - 5); (10) A copy of the "Warden's Review and Decision of Administrative Segregation Committee's Initial Hearing Recommendations" (Id., p. 6); and (11) A copy of Plaintiff's Deposition (Document No. 82-8).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 12, 2021, advising him of the right to file a response to Defendants' Motion for Summary Judgment. (Document No. 84.) On November 29, 2021, Plaintiff filed his Response in Opposition. (Document No. 86.) As Exhibit, Plaintiff attached the following: (1) A copy of Plaintiff's Disciplinary Incident Report charging Plaintiff was Trafficking (Marijuana/Hashish) in violation of Disciplinary Rule 1.11B (Document No. 86-1, pp. 2 -3); (2) A copy of Policy Directive 325.00, Section 6.02 regarding the "Reporting Rule Violations" and the redacting of any information regarding the identity of confidential inmate informants (Id., p. 5); (3) A copy of Superintendent Ames' Memorandum denying Plaintiff's appeal of his conviction of violating Disciplinary Rule 1.11B (Id., p. 7); (4) A copy of the Commissioner's Decision affirming the

decision of the Superintendent and denying Plaintiff's appeal (Id., p. 8); (5) A copy of the "Warden's Review and Decision of Administrative Segregation Committee's Initial Hearing Recommendations" (Id., p. 9); (6) A copy of Plaintiff's "Administrative Segregation Initial Hearing Recommendation" (Id., pp. 10 and 16); (7) A copy of Plaintiff's "Administrative Segregation Initial Hearing Form" (Id., pp. 11 and 17 - 18); (8) A copy of MOCC Evidence/Property Seizure Receipt concerning Plaintiff's legal mail (Id., p. 13); (9) A copy of a Notice dated September 9, 2020, advising Plaintiff of his upcoming Initial Administrative Segregation Review and inquiring whether he wanted an inmate legal representative (Id., p. 15); (10) A copy of the "Warden's Review and Decision of Administrative Segregation Committee's Initial Hearing Recommendations" (Id., p. 19); (11) A copy of a document exhibiting that Helix Jumper is David Keaton (Id., p. 21); (12) A copy of Policy Directive 325.00, Section 4, Evidence for the Inmate, stating that "the inmate or his/representative may present witnesses on the inmate's behalf, where such would not be unduly hazardous to institutional safety or correctional goals" during a disciplinary hearing (Id., p. 24); and (13) A copy of the West Virginia Division of Correction's Hearing Report regarding Plaintiff's disciplinary charge of Trafficking (Marijuana/Hashish) (Id., pp. 26 - 27). On December 3, 2021, Defendants filed their Reply. (Document No. 87.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 -

87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts

in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356.

Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the

claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary

judgment will be granted unless a reasonable jury could return a verdict for the non-moving party

on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will

support Plaintiff's claims, summary judgment is appropriate.

### <u>SUMMARY OF EVIDENCE</u>

<u>Plaintiff's Declaration</u>:

On July 13, 2020, Plaintiff attended the Disciplinary Hearing overseen by Defendant

Wilson.[2] (Document No. 75, pp. 2 - 5.) Plaintiff claims that Defendant Dixon "failed to provide

the required proper report" in compliance with Policy Directive. (<u>Id.</u>) Plaintiff further states that

Defendant Dixon was allowed to submit the evidence that was never disclosed to Plaintiff prior to

the Disciplinary Hearing. (<u>Id.</u>) During the Disciplinary Hearing, Plaintiff was represented by an

inmate representative, Stephen Wilson. (<u>Id.</u>) Plaintiff's "inmate representative moved for dismissal

---

[2] The undersigned notes that throughout Plaintiff's Declaration, Plaintiff's concludes that Defendants denied him due process of law. Unsupported affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment. *Moore v. United States*, 1987 WL 11280 (S.D.W.Va. March 23, 1987); *also see Evans v. Technologies Applications & Service, Co.*, 80 F.3d 954, 692 (4th Cir. 1996)(Summary judgment affidavits cannot be conclusory or based on hearsay). Therefore, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)(citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001)).

due to a violation of Policy Directive 6.02: Reports must state full times, locations, names of any and all individuals present." (Id.) Plaintiff states that "[w]hen asked about the missing information, Defendant stated that the missing parts are on separate paper and proceeded to provide it to the Hearing Officer, Defendant Wilson, out of the view of Plaintiff." (Id.) Plaintiff states this "did not allow Plaintiff to mount any sort of defense in opposition to the charge against him." (Id.) Plaintiff claims "Defendant Wilson rendered a finding of guilty even though there were clear violations of Policy Directive." (Id.) Plaintiff states that Defendant Ames "refused to properly investigate or review Plaintiff's appeal and denied relief." (Id.)

On September 11, 2020, Plaintiff states that he appeared before the Administrative Segregation Committee composed of Defendants Ward, Bess, and another Administrative Member. (Id.) Plaintiff states that during the hearing, Defendant Ward used dismissed disciplinary reports as a deciding factor for placing Plaintiff on administrative segregation. (Id.) Plaintiff also claims that neither he nor his inmate representative were allowed to call any witnesses on his behalf. (Id.) Plaintiff asserts that Defendants Bess and Ward denied Plaintiff's request for witnesses. (Id.) Plaintiff states that Defendant Ames upheld the Administrative Segregation Committee's decision to place him in administrative segregation. (Id.)

Defendants' Exhibits:

The record reveals that Plaintiff received a copy of the Disciplinary Incident Report on July 8, 2020. (Document No. 82-2.) The Incident Report charged Plaintiff with violating Disciplinary Rule 11.B Trafficking (Marijuana/Hashish) based on the following circumstances:

> On Wednesday, 6/17/20 at approximately 10:37 A.M. this Investigator (Curtis Dixon) began an investigation into allegations of a compromised employee. During the course of the investigation, information was obtained that indicated Inmate Steven Williams ODI# 3545024 arranged for contraband in the form of marijuana to be transported into the Mount Olive Correctional Complex. Through the review

9

of Williams' phone calls and based on information obtained throughout the interview process, sufficient circumstantial evidence was obtained to substantiate the allegations. Due to Inmate Williams arranging for drugs to come into the facility he is being charged with 1.11-2 Trafficking. Copies of the phone calls and notes made during a review of Williams' phone calls will be forwarded to the Correctional Hearing Officer for his review. End of Report.

(Id.) On July 13, 2020, Plaintiff's Disciplinary Hearing was conducted by Correctional Hearing Officer ("CHO") Jarrod Wilson. (Document No. 82-1.) Plaintiff was assisted by Inmate Representative Stephen Caleb Wilson, who made a verbal motion to dismiss due to an alleged violation of Section 6.02.[3] (Id.) CHO Wilson denied the motion and determined that Plaintiff would be permitted to hear the phones calls during the hearing. (Id.) During Investigator Dixon's testimony, both Plaintiff and his Inmate Representative were allowed to question Investigator Dixon. (Document Nos. 82-4 and 85.) Investigator Dixon testified that as a result of his investigation, several other inmates were charged with extorting and bribing former Correctional Officer David Keaton. (Id.) Investigator Dixon testified that his investigation focused on Plaintiff after evidence indicated that the mother of Inmate Dennis Bird met with Plaintiff's family members to obtain contraband later given to Officer Keaton. (Id.) Investigator Dixon testified that the evidence further revealed that Officer Keaton was paid at least $350 via a "Cash App" by Plaintiff's family. (Id.) Investigator Dixon testified that there were recorded phone calls wherein

---

[3] Policy Directive 325.00, Section 6.02 – Reporting Rule Violations states, in pertinent part, as follows (Document No. 82-3):

      a.     Incident Reports: Any employee witnessing or determining the occurrence of a rule violation pursuant to this policy directive shall complete an Incident Report as soon as possible. The Incident Report will fully describe the date, time, location, individuals present, and all other pertinent details regarding the alleged violation.

           (1)     Information regarding the identity of confidential inmate informants shall be deleted from documentation submitted to a Correctional Hearing Officer.

                    ***

Plaintiff directed his mother to send money to the "Cash App" name "Helix Jumper." (Id.) Finally, Investigator Dixon presented evidence that the identification of "Helix Jumper" was former Correctional Officer Keaton.[4] (Id.) Plaintiff admitted during the hearing that he had money sent to "Helix Jumper," but claimed the money was sent to settle a gambling debt. (Id.) In finding Plaintiff guilty of Disciplinary Rule 11.B Trafficking (Marijuana/Hashish), CHO Wilson specifically stated that he relied upon the following:

> Inv. Curtis Dixon testified his reports were true and correct; Mr. Dixon did read notes that were taken from the phone calls of the Defendant; stated that the Defendant's mother sent $350.00 to a cash app to the name Helix Jumper; stated that the app name belonged to Officer David Keaton.

> Defendant stated that he has a right to listen to the phone calls; stated that specifically his own phone calls; stated that he sent money to that cash app name Helix Jumper; stated that the money was sent to another inmate; stated that he never sent any money to a correctional officer; stated that he has never seen or talked to Officer David Keaton; stated that he has never tried to get contraband into the facility.

(Document No. 82-1.) CHO Wilson sanctioned Plaintiff to 60 days punitive segregation (July 13, 2020 – September 11, 2020) and 60 days loss of privileges (July 13, 2020 – September 11, 2020). (Id.) Plaintiff did not loss any good time credit. (Id. and Document No. 82-8, p. 7.) Plaintiff received a copy of the Disciplinary Hearing Report on July 16, 2020. (Document No. 82-1.) Plaintiff filed an appeal of the CHO's decision to Superintendent Ames. (Document No. 82-5.) On July 22, 2020, Superintendent Ames denied Plaintiff's appeal stating that "[a]fter a review of all pertinent documentation, including your appeal, it is my opinion that the Correctional Hearing Officer's findings and disposition shall be upheld." (Id.) Specifically, Superintendent Ames determined the following: (1) "There was substantial compliance with institutional standards and

---

[4] Correctional Officer Keaton was arrested and charged with bringing contraband into MOCC.

procedures relating to the rule violation;" (2) "The Correctional Hearing Officer's decision was based on sufficient evidence;" and (3) "The sanction imposed was proportionate to the rule violation." (Id.) Finally, Superintendent Ames notified Plaintiff that if he disagreed with this decision, Plaintiff could submit an appeal to the Commissioner within fifteen (15) days after receiving this decision. (Id.) Plaintiff filed an appeal to the Commissioner. (Id.) On September 2, 2020, the Commissioner determined that a "review indicates no reason to deviate from the decision of the Superintendent and the Appeal is affirmed and the grievance is denied." (Id.)

On September 9, 2020, Plaintiff received notice of his upcoming Initial Administrative Segregation Review. (Document No. 82-7, p. 2.) In response, Plaintiff indicated that he wished to have an inmate legal representative. (Id.) On September 11, 2020, an Administrative Segregation Initial Hearing Recommendation was conducted and Pro Committee Chair Member Brenda Ward noted that the sole consideration of the Committee was whether Plaintiff's housing classification would be general population or administrative segregation (placement in the Quality of Life Program). (Document Nos. 82-6 and 85.) During the hearing, Plaintiff's inmate legal representative requested that Inmate Bruce Bird be called as a witness to present testimony of Plaintiff's innocence on the Trafficking charge. (Id.) The Administrative Segregation Committee denied the request. (Id.) Both Plaintiff and his inmate legal representative, however, were allowed to present statements in support of Plaintiff's placement in general population. (Id.) Plaintiff's "Administrative Segregation Initial Hearing Form" indicated that since Plaintiff's incarceration with the WVDOC, Plaintiff had been found guilty of eight (8) Class I Disciplinary Reports and nine (9) Class II Disciplinary Reports.[5] (Document No. 82-7, pp. 4 - 5.) The foregoing disciplinary

---

[5] Class 1 violations are the highest level and Class II are the second highest level.

reports were reviewed during and hearing and acknowledged by Plaintiff. (Document Nos. 82-6 and 85.) At the conclusion of the Administrative Segregation Initial Hearing, the Administrative Segregation Committee recommended that Plaintiff's custody status be changed from punitive segregation to administrative segregation. (Document No. 82-7, p. 2.) The reasons for the Administrative Segregation Committee's recommendation were as follows: (1) Plaintiff's statements to the Committee; (2) The nature of the write-ups for which Plaintiff was placed in segregation; and (3) Based upon the recommendation by Investigator Dixon. (Id.) Also on September 11, 2020, the Warden reviewed the Administrative Segregation Committee's Initial Hearing Recommendations and adopted the recommendation of the Committee. (Id., p. 6.) On or about August 19, 2021, Plaintiff completed the Quality of Life Program and was placed back into general population. (Document No. 82-8, p. 9.)

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

In Plaintiff's Motion, Plaintiff argues he is entitled to summary judgment on his claim that Defendants violated his right to procedural due process. (Document No. 75.) First, Plaintiff

13

contends he was denied due process during his disciplinary hearing where he was convicted of trafficking.[6] (Id.) Specifically, Plaintiff argues that the Incident Report prepared by Investigator Dixon violated Policy Directive 6.02 (Reports must state full times, locations, names of any and all individuals present) because the Incident Report did not include all evidence that was presented against Plaintiff at the disciplinary hearing. (Id.) Second, Plaintiff claims he was denied due process during his administrative segregation hearing because (1) his request to call a witness was denied, and (2) dismissed disciplinary reports were considered as a factor for placing Plaintiff on administrative segregation. (Id.) Finally, Plaintiff alleges that Superintendent Ames violated his due process rights by denying Plaintiff's appeal challenging his disciplinary conviction and adopting the Administrative Segregation Committee's recommendation that Plaintiff be placed in administrative segregation. (Id.)

In Defendants' Response in Opposition and cross Motion for Summary Judgment, Defendants argue that there was no due process violation. (Document No. 80, pp. 11 - 13 and Document No. 83, pp. 7 – 11.) Defendants first argue that Plaintiff cannot identify a liberty interest that entitles him to any procedural due process protection. (Id.) Defendants further state that even assuming Plaintiff could show a liberty interest, Plaintiff cannot establish that the denial of such an interest imposed atypical and significant hardship on Plaintiff in relation to the ordinary

---

[6] To the extent Plaintiff alleges that the disciplinary charges were false, such does not state a constitutional claim. It is well-established that the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986)("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."); *McClary v. Fowlkes*, 2008 WL 3992637, *4 (E.D.Va. 2008)(finding inmate has no constitutional right against being falsely accused of conduct that may result in deprivation of protected liberty interest); *Rhodes v. Sterling*, 475 F.Supp.3d 470 (D.S.C. July 30, 2020)(allegations that false disciplinary charges were brought were insufficient to state a Section 1983 claim); *Jenkins v. Bittinger*, 2016 WL 11410971, * 2 (D.S.C. Oct. 17, 2016)("Plaintiff has no actionable constitutional claim against either [defendant] based on his allegations of their filing 'false' disciplinary charges.").

incidents of prison life. (Id.) Defendants explain that "being housed in a segregation unit does not amount to a denial of a liberty interest under federal law." (Id.) Thus, Defendants argue that Plaintiff was not entitled to any procedural due process with regard to either hearing because no liberty interest was at issue. (Id.) Defendants explain that "even if it was found to affect a liberty interest under the facts of this case, being restricted to his cell did not impose an "a typical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life." (Id.) Defendants note that "Plaintiff was permitted one hour a day out of his cell to shower, make phone calls, and handle other business." (Id.) Additionally, Defendants state the Plaintiff was "provided meals along with all other inmates in his section." (Id.) Accordingly, Defendants argue that Plaintiff's Motion for Summary should be denied and Defendants' Motion for Summary Judgment should be granted. (Id.)

In Response, Plaintiff first argues that he has a liberty interest based upon Policy Directive 325.00, Section 6.02. (Document No. 86.) Plaintiff argues that Section 6.02 provides that "report must fully state dates, times, locations, individuals present." (Id.) Plaintiff complains that Defendants Dixon and Wilson did not abide by that policy. (Id.) Plaintiff argues that because he was not aware of all the evidence that was going to presented against him, Plaintiff had "no possible way to prepare an effective defense." (Id.) Next, Plaintiff again complains that Defendants Bess and Ward did not allow Plaintiff to call witnesses at his administrative segregation hearing. (Id.) In support, Plaintiff attaches of copy of a Policy Directive 325.00, Section 4, Evidence for the Inmate, which provides that "the inmate or his/representative may present witnesses on the inmate's behalf, where such would not be unduly hazardous to institutional safety or correctional goals" during a disciplinary hearing. (Document No. 86-1, p. 24.) Plaintiff further contends that Defendants Bess and Ward "used dismissed write ups as evidence to weigh on the decision to the

Warden Donald Ames." (Document No. 86.) Finally, Plaintiff complains that Defendant Ames denied Plaintiff's appeals "even after review of Plaintiff's rights being violated by policy and constitution." (Id.) Plaintiff alleges that his placement in "segregation for a total of 13 months" imposed atypical and signification hardship.[7] (Id.)

In Reply, Defendants again argue that Plaintiff has not identified a protected liberty interest that he was deprived or that the denial of such an interest imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. (Document No. 87, pp. 2 - 5.)

In his Complaint, Plaintiff alleges a violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges that Defendants violated his due process rights under the Fourteenth Amendment. First, Plaintiff alleges that Defendants Wilson and Dixon violated Plaintiff's due process right during his disciplinary hearing. Plaintiff argues that the Incident Report prepared by Investigator Dixon violated Policy Directive 6.02 because the Incident Report did not include all evidence that was presented against Plaintiff at the disciplinary hearing. Plaintiff explains that because he was not aware of all the evidence that was going to presented against him, Plaintiff had "no possible way to prepare an effective defense." Plaintiff complains that Defendant Wilson found Plaintiff guilty of Trafficking Marijuana/Hash in violation of 1.11B and sanctioned Plaintiff to 60-days of punitive segregation and loss of privileges for 60-days. Plaintiff further

---

[7] Plaintiff complains that he "would be able to provide proof" that his constitutional rights were violated during his disciplinary and administrative hearings, but "defendants refuse to send transcripts and sent Plaintiff a CD (audio disc) that Plaintiff is not allowed to have." (Document No. 86, pp. 6 – 7.) First, it is undisputed that Plaintiff and this Court were provided with audio recordings of the hearings. Second, the record reveals that Plaintiff has had access and the ability to listen to the audio recordings. In his "Motion for Transcription Order for Audio Recording of Disciplinary and Administrative Segregation Hearings," Plaintiff indicates that he has listened to the audio recordings. (Document No. 76.) Despite the fact that Plaintiff may be precluded from possessing the CD of the audio recordings, Plaintiff has had access to the audio recordings.

complains that he lost his job as a handicap assistant and his privilege to take educational classes. Plaintiff, however, did not lose any good time credit as a result of his disciplinary conviction.[8] Second, Plaintiff argues that his due process rights were violated during his administrative segregation hearing when Defendants Bess and Ward (1) refused to allow Plaintiff to call witnesses and (2) "used dismissed write ups as evidence" to support their recommendation of administrative segregation.[9] Finally, Plaintiff alleges that Defendant Ames violated his due process rights by denying his appeal concerning his disciplinary conviction and adopting the Administrative Segregation Committee's recommendation that Plaintiff be placed in administrative segregation.[10]

---

[8] If Plaintiff's disciplinary proceedings would have involved the loss of good time credit, Plaintiff would have been entitled to the procedures set forth in *Wolff*. In *Wolff*, however, the Supreme Court stated that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have lawfully committed. *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975. The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* Thus, "*Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." *Johnson v. Warden, FCI Williamburg*, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), *aff'd* 597 Fed.Appx. 161 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). To the extent Plaintiff is claiming his disciplinary conviction resulted in the loss of good time credit and resulted in a violation in his due process rights, such a claim must first be pursued pursuant to 28 U.S.C. § 2241. A Section 1983 action seeking monetary damages for Plaintiff's allegedly invalid disciplinary conviction would be precluded by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) unless Plaintiff successfully challenged his disciplinary conviction in a *habeas* proceeding.

[9] Despite Plaintiff's argument to the contrary, the record reveals that no dismissed charges were considered against Plaintiff during the Administrative Segregation Hearing. Plaintiff's "Administrative Segregation Initial Hearing Form" indicated that since Plaintiff's incarceration with the WVDOC, Plaintiff had been found guilty of eight (8) Class I Disciplinary Reports and nine (9) Class II Disciplinary Reports. (Document No. 82-7, pp. 4 - 5.) These were the charges considered by the Administrative Segregation Committee.

[10] In addition, the undersigned further finds that the dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. *See Fellove v. Heady*, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state a *Bivens* claim"); *Mabry v. Ramirez*, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a

17

Although the Fourteenth Amendment of the United States Constitution prohibits a State from depriving "any person of life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for the period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction and imprisonment implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions of his detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation

---

*Bivens* claim for deliberate indifference to serious medical needs"); *Paige v. Kupec*, 2003 WL 23274357 *1 (D.Md. March 31, 2003), *aff'd*, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Plaintiff's claims against Defendant Ames are based solely upon Defendant Ames' involvement in the administrative remedy process.

to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted); see McNeill v. Currie, 84 Fed.Appx. 276, 277 (4th Cir. 2003); also see Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985)(When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized.); Smith v. Deemer, 641 Fed.Appx. 865,868 (11th Cir. 2016)(citing Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (*Wolff* sets forth procedures that must accompany disciplinary hearings when there is a loss of good time credit. When a prisoner has not lost any good-time credit, *Wolff* does not apply); Ordaz v. Lynaugh, 20 F.3d 1171 (5th Cir. 1994)("*Wolff* . . . does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."); Annabel v. Frost, 2015 WL 1322306, * 8 (W.D.Ky. June 14, 2016)("A prison inmate has a liberty interest in disciplinary proceedings if he or she faces a sanction that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incident of prison life."). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

First, there is no allegation or indication that the conditions Plaintiff's detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause. Next, the undersigned considers whether Plaintiff has established a protected liberty interest. "Without a protected liberty or property interest, there can be no federal procedural due process claim." Experimental Holding, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007)(citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 579, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); also see Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174

19

(2005)("We need reach the question of what process is due only if the inmate establishes a constitutionally protected liberty interest"). In the instant case, Plaintiff did not lose any good time credit as a result of his disciplinary charges. Plaintiff, however, alleges that he had a liberty interest concerning his disciplinary hearing based upon Policy Directive 325.00, Section 6.02("The Incident Report will fully describe the date, time, location, individuals present, and all other pertinent details regarding the alleged violation").[11] Plaintiff further contends that he had a liberty interest concerning his administrative segregation hearing based upon Policy Directive 325.00, Section 4("the inmate or his/representative may present witnesses on the inmate's behalf, where such would not be unduly hazardous to institutional safety or correctional goals").[12] Prison staff's failure to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)(If the state law grants more procedural rights than the Constitution requires, a State's failure to abide by that law is not a federal due process issue); Donohue v. Diggs, 2011 WL 795889, * 3 (W.D.Va. March 1, 2011)("[A] state's failure to abide by its own procedural regulations is not a federal due process issue and is, therefore, not actionable under § 1983."). Accordingly, the undersigned finds that Plaintiff's reliance upon Policy Directive 325.00, Sections 4 and 6.02 to establish a protected liberty interest is without merit.[13]

---

[11] Plaintiff clearly received all of the minimum due process safeguards set forth in *Wolff* during his disciplinary process. The record reveals that Plaintiff received written notice (July 8, 2020) of the charges at least 24 hours before the Disciplinary Hearing (July 13, 2020). (Document No. 82-2.) Plaintiff was presented the opportunity to present evidence and witnesses in his defense. (Document No. 82-1, 82-4, 85.) Finally, Plaintiff received a written statement of the evidence relied upon and the reasons for the disciplinary action. (Document No. 82-1.)

[12] Plaintiff's reliance upon this policy is misplaced. This policy clearly applies to disciplinary hearings – not administrative hearings.

[13] Even where a state statute or policy may create a liberty interest, the denial of such an interest must

20

Finally, the undersigned will consider whether Plaintiff can establish that the conditions of confinement constitute atypical and significant hardship in relation to the ordinary incidents of prison life. A "fact specific" comparative exercise is required when determining whether confinement conditions are atypical and substantially harsh "in relation to the ordinarily incidents of prison life." Id. In Prieto, the Fourth Circuit determined that the Sandin standard contains two parts: (1) First, the Court must determine what constitutes the "ordinary incidents of prison life" for this particular inmate; and (2) Second, with that baseline established, the Court must determine whether the prison conditions impose atypical and substantial hardship in relation to that norm. Prieto, 780 F.3d at 253-54. Although general prison population is not always the basis for comparison, "general population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." Incumaa, 791 F.3d at 527("[T]he 'baseline for atypicality' may shift depending on the 'prisoner's conviction and sentence.'")(citing Prieto, 780 F.3d at 253).

In the instant case, the undersigned finds that general population is the appropriate baseline as Plaintiff was in general population before being placed in punitive and administrative segregation. Using general population as the baseline, the undersigned finds that Petitioner fails to allege conditions of confinement in segregation that satisfy the standard set forth in Sandin. In Beverati, the Fourth Circuit determined that the following conditions in administrative segregation did not constitute atypical and significant hardship in comparison to general population:

> ...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the

"impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" for the liberty interest to warrant the protection of the Due Process Clause. See Prieto v. Clarke, 780 F.3d 245, 249 (4th Cir. 2015)(citing Sandin, 515 U.S. 481-82, 115 S.Ct. 2293).

food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

Beverati, 120 F.3d at 502. In contrast, the Supreme Court in Wilkinson determined that the

following conditions at a supermax facility imposed an atypical and significant hardship under any

plausible baseline:

> . . . almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30-day placement in *Sandin*, placement at OSP is indefinite and, after an initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.

Wilkinson, 545 U.S. at 223-24, 125 S.Ct. at 2394-95.

Although Petitioner appears to challenge the appropriateness for his placement in

segregation, he cannot establish that specific conditions of his confinement in segregation were

atypical and created a significant hardship as compared to ordinary prison life in general

population. Petitioner concludes that his mere placement in segregation constitutes an atypical and

significant hardship. Segregation, in and of itself, does not deprive an inmate of a liberty interest

or create an atypical hardship. See Beverati, 120 F.3d at 502. The length of time that segregation

is imposed is a factor which Courts must consider in determining whether conditions are

significant and atypical. See Wilkinson, 545 U.S. at 224, 125 S.Ct. at 2394-95; Tellier v. Fields,

280 F.3d 69, 80 (2nd Cir. 2000)(finding an inmate's confinement in segregation for 514 days

without having a hearing resulted in confinement that was atypical and significant). In the instant case, Plaintiff's segregation was not for an indefinite period and there is no allegation his confinement in segregation had a collateral consequence on his sentence. Plaintiff was placed in punitive segregation for 60 days and administrative segregation for 11 months, which is not such a prolonged period as to constitute a significant and atypical hardship. See Wilkerson v. Goodwin, 774 F.3d 845, 855 (5th Cir. 2014)(citing cases)("[T]he duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years."). Plaintiff does not set forth any specific conditions of his confinement in segregation were atypical and created a significant hardship as compared to ordinary prison life in general population. Additionally, nothing in the record indicates that Plaintiff's conditions of confinement on segregation were atypical or resulted in a significant hardship. To the extent that Plaintiff alleges a liberty interest in retaining all privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no federal right to demand rehabilitative programs. Moody

23

v. Daggett, 429 U.S. 78, 88, n. 9, 97 S. Ct. 274, 279, n. 9, 50 L. Ed. 2d 236 (1976)(holding that federal prisoners have no statutory or constitutional right to participate in rehabilitative programs while incarcerated); Acree v. Clark, 86-7167, 1986 WL 18023 (4th Cir. Nov. 10, 1986) citing Bowring v. Godwin, 551 F.2d 44, 48 n 2 (4th Cir. 1977)(stating that "[i]t has been widely recognized that rehabilitation is one of the primary purposes and goals of incarceration, although it is not mandated by any provision of the Constitution"); Gill v. United States Parole Commission, et al., 692 F. Supp. 623, 628 (E.D.Va. 1988)(holding that the sentencing Court's order recommending that petitioner be placed in a drug rehabilitation program failed to vest any fundamental right in plaintiff to participate in such program); and Pace v. Fauver, 479 F. Supp. 456, 459 (D.N.J. 1979)(holding that prison officials' refusal to allow state prisoners to establish and operate an alcoholic rehabilitation program within the prison was not a violation of the Fifth, Eighth or Fourteenth Amendment). Finally, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. See Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), citing Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"); Altizer v. Paderick, 569 F.2d 812 (4th Cir. 1978)(holding that federal due process constraints are not implicated because the classification of a State prison inmate is a matter of State prison officials' discretion); and Meachum v. Farno, 427 U.S. 215, 225 (1976)(stating that the transfer of an inmate to a higher

24

security facility does not violate a liberty interest). Since the facts underlying Plaintiff's Complaint are insufficient to establish a protected liberty interest under the Due Process Clause, the undersigned finds it unnecessary to consider what process was due to Petitioner. See Wilkinson, 545 U.S. at 221, 125 S.Ct. at 2393("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . ."); Petway v. Lappin, 2008 WL 629998 (N.D.W.Va. March 5, 2008)(finding that plaintiff's "due process complaints concerning either the misapplication of policy and procedures, or a lack of official rules and regulations, must fail" because the inmate had no protected liberty interest in avoiding segregated confinement"). Accordingly, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment (Document No. 82) be granted and Plaintiff's Motion for Summary Judgment (Document No. 75) be denied.

Based upon the foregoing, the undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's claims.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 82), **DENY** Plaintiff's Motion for Summary Judgment (Document No. 75), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings

and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 28, 2022.

Omar J. Aboulhosn
United States Magistrate Judge